UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| DUAL DIAGNOSIS TREATMENT CENTER, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| BLUECROSS BLUESHIELD OF TENNESSEE | ) ) ) |
| Defendant. | |

1:22-CV-00073-DCLC-CHS

**MEMORANDUM OPINION AND ORDER**

Plaintiffs brought this action asserting underpayment and misdirected payment under one or more health insurance plans (the "plans") of validly assigned benefits owed to them by Defendant BlueCross BlueShield of Tennessee (BCBST) [*See* Doc. 1-1]. BCBST moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) [Doc. 16]. For the reasons stated below, the Court **RESERVES RULING** as to Plaintiff Dual Diagnosis until **Monday, September 26, 2022** during which time Dual Diagnosis may respond to an additional argument in BCBST's reply [Doc. 30, at 4]. As to the remaining Plaintiffs, BCBST's motion is **DENIED**.

I.     **BACKGROUND**

Plaintiffs provide healthcare for patients suffering from substance abuse and mental health issues [Doc. 1-1, ¶ 2]. Some of these patients carry health insurance administered by Defendant BCBST [*Id.*, ¶¶ 16–17]. Plaintiffs allege that BCBST contracts with "in-network" healthcare

1

providers to provide discounted services to patients [*Id.*, ¶ 1]. By contrast, as "out-of-network" (OON) providers, Plaintiffs lack a direct contractual relationship with BCBST [*Id.*, ¶¶ 4, 46].

Because many patients are unable to pay for services out of pocket, Plaintiffs engage in a process designed to protect their right to compensation for their services. Before receiving treatment, patients provide information about their insurance [*Id.*, ¶¶ 26–27]. Plaintiffs call BCBST to verify coverage and obtain pertinent details including the percent of billed services subject to repayment [*Id.*, ¶¶ 27–38]. Plaintiffs prompt patients to sign forms assigning to Plaintiffs exclusive rights to benefits for healthcare services Plaintiffs provide [*Id.*, ¶ 48].

After obtaining assignments from and treating each of the patients at issue in this litigation, Plaintiffs submitted claims notifying BCBST of the assignments and claim amounts [*Id.*, ¶ 237]. BCBST "continued to interact" with Plaintiffs over extended periods of time, including for the purpose of receiving and processing claims forms, communicating about services and claims, and requesting additional information for the claims [*Id.*, ¶ 238]. Despite requests, BCBST has not provided operative plan documents to Plaintiffs [*Id.*, ¶ 266].

When payment was not forthcoming, Plaintiffs initiated an investigation which uncovered payments from BCBST directly to the patients [*Id.*, ¶¶ 264–66]. For each of the claims at issue, Plaintiffs allege that the payments were significantly below what the patient's plan required and that for most of these patients, Plaintiffs have recovered less than or none of the amount that BCBST paid [*Id.*, ¶¶ 246–49]. At no time did BCBST notify Plaintiffs of payments to patients, the reasons for the alleged underpayment, nor the process for administrative appeal [*Id.*].

II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court liberally construes the complaint in favor of the opposing party. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

To survive dismissal, the plaintiff must allege facts that are sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and dismissal is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### III. DISCUSSION

#### A. Standing

BCBST argues that Plaintiffs lack standing to bring a claim for benefits owed under the plans because Plaintiffs have failed to plead adequate assignments [Doc. 16, 4–6]. Except as explained further below as to Plaintiff Dual Diagnosis, this argument is without merit.

Although healthcare providers are generally not "beneficiaries" under ERISA and therefore

lack direct standing to sue for benefits, a valid assignment of benefits confers derivative standing. *Brown v. BlueCross BlueShield of Tenn.*, 827 F.3d 543, 545–46 (6th Cir. 2016). In such a case, a motion to dismiss for lack of ERISA standing is proper if a plaintiff has failed to plausibly allege valid assignments of rights to payment under a plan. *See id.* at 547; *DaVita, Inc. v. Marietta Mem'l Hosp. Emp. Benefit Plan*, 978 F.3d 326, 343 (6th Cir. 2020), *rev'd on other grounds*, 142 S. Ct. 1968 (2022); *see also Twombly*, 550 U.S. at 555, 570.

Here, Plaintiffs have adequately pleaded assignments of patients' rights to receive payment under the plans. Each patient signed a form containing language like the following, allegedly signed by patient Ja.Is. at Plaintiff Shreya Health of California's behest:

> I patient/policyholder irrevocably assign, transfer, and convey to *Provider* the exclusive rights to benefits, insurance proceeds or other moneys otherwise due to me for services rendered by *Providers* ("Benefits") from my insurer, employee benefit plan, welfare benefit plan, government plan, tortfeasor, or other liable third party ("Liable Third Parties") and all administrative, arbitral, judicial, or other rights I may have relating to the recovery of Benefits from Liable Third Parties

[Doc. 1-1, ¶ 136] (emphasis added).

BCBST protests that Plaintiff's allegations fall short of *Twombly-Iqbal* pleading standards because they allege assignments only to non-specified "Providers." Yet the Complaint is crystal clear for each patient that one or more of the Plaintiffs had the patient sign an assignment form as a condition of receiving treatment. In Ja.Is.'s case, for example, the Complaint specifies Shreya Health and Vedanta as the parties that requested the forms [*id.*]. BCBST's argument therefore amounts to an assertion that Shreya Health and Vedanta have not plausibly alleged that they are the "Providers" named in Ja.Is.'s form. Yet this is exactly what the Complaint alleges. These allegations are plausible, and *Twombly* and *Iqbal* require nothing further.[1]

---

[1] Indeed, unlike the Shreya Health form, the Vedanta form *does* name Vedanta as the assignee. Thus, Defendants' argument applies only to those providers who used forms that fail to identify the provider.

4

BCBST cites *Bishop v. Lucent Technologies* in support of its argument. 520 F.3d 516, 519 (6th Cir. 2008). *Bishop* is inapposite. There, the court affirmed the grant of a motion to dismiss an ERISA case where plaintiffs alleged facts indicating that their claims were likely barred by the statute of limitations. *Id.* at 521. The Court reasoned that when a complaint discloses a likely time bar, a plaintiff cannot raise a right to relief above the speculative level simply by relying on bare assertions to the contrary. *Id.* Here, there is no indication that Plaintiffs' claims are untimely, and BCBST has pointed to no facts in the Complaint that render Plaintiffs' right to relief speculative. Thus, accepting all nonconclusory factual allegations as true, Plaintiffs have standing.

B.  **Plaintiff Dual Diagnosis**

For the first time in its reply brief, BCBST argues that the Complaint is silent as to any involvement of Dual Diagnosis in the claims alleged in the Complaint and that Dual Diagnosis should therefore be dismissed from the case [Doc. 30, pg. 4]. Ordinarily, arguments not raised in an initial brief are waived. *See, e.g.*, *Ramsbottom v. Ashton*, No. 3:12-CV-00272, 2022 WL 106733, at *30 (M.D. Tenn. Jan. 11, 2022). Nonetheless, as explained above, to obtain derivative standing under a theory of assignment, Dual Diagnosis must allege a valid assignment. Dual Diagnosis has not responded to this argument, either by requesting to file a sur-reply or filing a motion to strike. Accordingly, the Court will **RESERVE RULING** as to Plaintiff Dual Diagnosis on BCBST's motion until **Monday, September 26, 2022** during which time Plaintiff may respond to the argument contained in BCBST's reply.

C.  **Preemption**

BCBST next argues that ERISA preempts Plaintiffs' state law claims. The Court finds this argument to be premature because the Complaint does not—and need not—allege that any of the plans at issue are governed by ERISA. As applicable here, ERISA preemption applies to "any or

5

Case 1:22-cv-00073-DCLC-CHS   Document 39   Filed 09/19/22   Page 5 of 11   PageID #: 275

all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).[2] State-law breach of contract claims are preempted as to any claim for benefits against a plan covered by ERISA. *See Girl Scouts of Middle Tenn. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 419 (6th Cir. 2014) ("ERISA specifically provides for remedies for breaches of contract . . . , so any state law claim that granted relief for these breaches would 'duplicate, supplement, or supplant the ERISA civil remedies.'"); *see also Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 582 (6th Cir. 2002) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (2002)) (explaining that Congress intended ERISA to be the "exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits."). A plan is covered by ERISA if (1) the plan is outside the Department of Labor's safe-harbor regulations, *see* 29 C.F.R. § 2510.3-1(j); (2) a "reasonable person could ascertain the intended benefits, class of beneficiaries, source of financing, and procedure for receiving benefits"; and (3) the employer "established or maintained the plan with the intent of providing benefits to employees." *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434–45 (6th Cir. 1996).

Here, Plaintiffs' allegations do not establish whether the patients' plans are ERISA plans. To be sure, the allegations provide extensive detail on the intended benefits and at least some information on the procedure for receiving them. Plaintiffs allege that all plans included "coverage for substance abuse/mental health treatment and preferred provider organization ('PPO') coverage" [Doc. 1-1, ¶ 42]. For each patient, the Complaint further describes deductibles, annual

---

[2] This form of preemption, termed "express preemption," contrasts with "complete preemption," a jurisdictional doctrine permitting federal courts to hear cases removed from state court which, although predicated solely on state-law claims, are nonetheless displaced by ERISA's comprehensive remedial scheme. *K.B. v. Methodist Healthcare – Memphis Hosps.*, 929 F.3d 795, 800 (6th Cir. 2019). Here, Plaintiffs allege ERISA as a basis for recovery of underpaid claims, and therefore, complete preemption does not apply.

maximums, coverage information, percent coverage, precertification requirements, billable codes, and out-of-state restrictions on plans [Doc. 1-1, ¶ 140]. Absent from the Complaint is any information concerning financing of the plans, nor does the Complaint describe any classes of beneficiaries. The allegations are similarly silent as to employers' intentions in establishing these plans, as well as the employer's level of involvement as is necessary to assess the applicability of the safe-harbor regulations. *See* 29 C.F.R. § 2510.3-1(j); *Gooden v. Unum Life Ins. Co.* 181 F. Supp. 3d. 465, 471 (E.D. Tenn. 2016) (assessing whether the employer contributed to or endorsed an insurance program). Accordingly, the Complaint fails to establish whether any patient's plan is governed by ERISA.

Plaintiffs concede that "to the extent the claims are made under ERISA, the breach of contract claims are preempted for those patients" [Doc. 18, pg. 33]. The Court agrees. Further factual development could reveal that ERISA governs some or all the plans and therefore preempts the state law claims. At that time, a proper motion on the state law claims would be appropriate. *See Schachner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d 889, 896 (6th Cir. 1996) (vacating district court's dismissal of state law claims based on the possibility that members of a proposed Rule 23 class had claims predicated on non-ERISA plans). For now, it suffices that Plaintiffs allege that either ERISA or state law governs each of the claims.

The Court similarly rejects BCBST's argument that the Complaint fails because it omits specific plan language. A beneficiary may sue under ERISA to recover benefits under the terms of a plan. 29 U.S.C. § 1132 (a)(1)(B). Plaintiffs have alleged the existence and material terms of the plans under which they seek payment. [*See* Doc. 1-1, ¶¶ 52–235.] The Complaint details for each patient the portion of billed services BCBST owed Plaintiffs under the plans—ranging from 50% to 60% depending on the patient—and that in each case, BCBST paid significantly less than

7

what was owed. [*See id.* ¶¶ 52–235.] Plaintiffs confirmed these terms during numerous telephone calls to BCBST.[3]

### D. Exhaustion of Administrative Remedies

ERISA requires that employee benefit plans "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. Although ERISA does not expressly require exhaustion of administrative remedies at the plan level, courts have read such a requirement into the statute. *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004). The exhaustion requirement is subject to exceptions, however. *Id.* at 505. A court may, for example, exercise its discretion to excuse non-exhaustion where resort to administrative appeal would be futile or the remedy would be inadequate. *Id.* (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998)). ERISA regulations further provide that a claimant is deemed to have exhausted remedies if the plan fails to "establish or follow claims procedures consistent with the requirements" of the regulation. 29 C.F.R. § 2560.503-1(l). The exhaustion requirement seeks to preserve the efficiency of plan fiduciaries' activities, permit independent interpretation and self-correction, and facilitate judicial review. *Coomer*, 370 F.3d at 504. Yet, in

---

[3]   BCBST attaches to its motion a document purporting to be a "UHS Plan" governing patient Dr. Al.'s claim [Doc. 16-1]. BCBST argues that under the terms of this plan, contrary to Plaintiffs' assertions, BCBST had the right to pay either Dr. Al. or Plaintiffs at its discretion regardless of any assignment of benefits. A document referenced in a complaint becomes part of the complaint for purposes of a motion to dismiss. Fed.R.Civ.P. 10(c); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007). By contrast, when a party includes materials outside the complaint, a court may consider the materials and convert the motion to a motion for summary judgment. Fed.R.Civ.P. 12(d); *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009). The Complaint, however, does not reference this document, and the Court cannot determine at this early stage that this UHS Plan is indeed the governing document for Plaintiffs' derivative claim as to Dr. Al. [*See* Doc. 1-1, ¶¶ 103–109.] Accordingly, the Court declines to look outside the Complaint to consider this document on BCBST's motion to dismiss.

a recent case holding that fiduciaries must include explanations of internal appeal procedures in underlying plan documents, the Sixth Circuit indicated that the exhaustion requirement and its exceptions must be read in light of ERISA's "central goal[]" of "enabl[ing] beneficiaries to learn their rights and obligations at any time." *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 887 (6th Cir. 2020) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)).

In an analogous case in a sister district, a court declined to dismiss a claim by a healthcare provider who obtained a valid assignment of benefits from a patient and was denied reimbursement. *Spectrum Health v. Valley Truck Parts*, No. 1:07-CV-1091, 2008 WL 2246048, at *6 (W.D. Mich. May 30, 2008). The insurer informed the provider that it was denying the provider's claim because of its determination that the patient had a preexisting condition, yet in a yearlong series of communications contesting the denial, the insurer failed to inform the provider of the 180-day timeline for appeal. *Id.* at *3. The Court rejected the insurer's claim that the provider failed to exhaust its administrative remedies because the provider lacked an opportunity for full and fair review. *Id.* at *5.

Like the provider in *Spectrum Health*, Plaintiffs engaged in a protracted series of communications with BCBST regarding their claims [Doc. 1-1, ¶ 238], and BCBST never notified them of either the payments to the patients or the process for appeal [*Id.*, ¶¶ 264, 266]. Because Plaintiffs were never informed of the payments to the patients, they were not even in a position to contest them. *Cf. Spectrum Health*, 2008 WL 2246048, at *6 (recognizing ambiguity as to whether telephone conversations concerning claim denial constituted an appeal). By the time Plaintiffs learned about the alleged underpayments, the 180-day window for administrative appeal had closed, cutting off availability of full and fair review.

9

Plaintiffs further cite *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842 (11th Cir. 1990) in support of their argument that they should be deemed to have exhausted their administrative remedies. Although *Curry* is not binding on this Court, its reasoning is instructive. There, an employer withheld plan documents supporting a denial of benefits and detailing review procedures. *Id.* at 844. In upholding the district court's award of a penalty and attorneys' fees, the court explained that it is within a district court's discretion to excuse non-exhaustion when a plan administrator denies meaningful access to review procedures then seeks dismissal based on a claimant's failure to follow the procedures. *Id.* at 846–47.

Here, Plaintiffs have adequately alleged that BCBST has denied them meaningful access to review procedures. Despite submitting claims for payment directly to BCBST, Plaintiffs allege that BCBST has never notified them of payments made directly to patients or provided information on review procedures [Doc. 1-1, ¶¶ 264–66]. Rather than learning of the alleged underpayments from BCBST, Plaintiffs only found out about the payments to patients after conducting their own investigation [*Id.*]. BCBST failed to provide access to plan documents where appeal information could likely be found despite repeated requests from Plaintiffs [*Id.*]. Far from promoting efficiency, self-correction, and orderly judicial review, BCBST's denial of access to review procedures impedes Plaintiffs' ability to learn their rights at any time.

Accordingly, the Court excuses Plaintiffs' non-exhaustion of administrative remedies.

IV. **CONCLUSION**

For the foregoing reasons, the Court **RESERVES RULING** as to Plaintiff Dual Diagnosis until **Monday, September 26, 2022** during which time Dual Diagnosis may respond to an additional argument in BCBST's reply [Doc. 30, at 4]. As to the remaining Plaintiffs, BCBST's motion is **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge